

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

January 5, 1990

Honorable Oscar William Loyd, II          Opinion No.  JM-1133
Criminal District Attorney
P. O. Box 216                             Re:   Certification of a
Gilmer, Texas    75644                    petition and financing
                                          of a local option elec-
                                          tion under the Alcoholic
                                          Beverage Code   (RQ-1865)

Dear Mr. Loyd:

You ask two questions  about local option liquor  elec-
tions.  Your first question  concerns the interpretation  of
section 251.10 of  the Alcoholic Beverage  Code (the  code).
That  section  prescribes  the  requirements  for  counting
signatures on a  petition requesting a  local option  liquor
election.  Subsection (b) of that section provides:

> (b)  <u>No signature may  be counted</u>,  either
> by  the  registrar  or  commissioners  court,
> <u>where there is reason to believe that</u>:
>
> (1)  it is not  the actual  signature
> of the purported signer;
>
> (2)  the  voter  registration  certi-
> ficate number is not correct;
>
> (3)  the  voter  registration  certi-
> ficate number is not  in the actual  hand-
> writing of the signer;
>
> (4)  <u>it is a duplication either of  a
> name or of handwriting  used in any  other
> signature on the petition</u>;    .
>
> (5)  the  residence  address  of  the
> signer is  not correct  or is  not in  the
> actual handwriting of the signer; or
>
> (6)  the  name  of  the voter  is  not
> signed  exactly  as  it  appears  on  the

> official copy of the current list of
> registered voters for the voting year in
> which the petition is issued. (Emphasis
> added.)

Specifically, you ask whether the language underlined above requires that each entry that appears to violate subsection (b)(4) is to be disregarded in determining the sufficiency of the petition signatures or whether the first entry in a questionable series may be counted as a valid signature. You offer the example of a voter who signs his name on a petition more than once, and ask whether the first entry is a "duplication."

In an earlier opinion of this office, the provisions of section 251.10(b)(6) were determined to be unambiguous and mandatory. Attorney General Opinion JM-501 (1986). The registrar of voters has no authority to waive the signature requirements of that subsection. Id. By its terms, sub-section (b) states that "no signature may be counted" under certain circumstances. We do not believe that the language prohibiting duplicative names or handwriting can reasonably be construed to allow the counting of the "original" or first name in a series and to disallow the subsequent entries. The plain meaning of subsection (b)(4) is that each name that appears more than once and each name that appears to be written in the same handwriting is void. Several definitions that support our reading of sub-section (b)(4) are found in Webster's Ninth New Collegiate Dictionary, which defines "duplicate" as:

> being the same as another . . . either of two
> things exactly alike and [usually] produced
> at the same time or by the same process
> . . . one that resembles or corresponds to
> another.

Thus, it is our opinion that all of the signatures or names in a series that appear to violate subsection (b)(4) are to be disregarded in verifying a petition regardless of the order in which they may appear on the petition.

Your second question relates to the payment of expenses in an election held pursuant to the code. Section 251.40 provides that county expense is limited to the holding of only certain local option liquor elections per year. It also authorizes the county to obtain reimbursement for election costs in cities or towns within the county.

Section 251.41 requires a deposit before the issuance of a petition for elections when the county is not required to pay the expenses under section 251.40. In its entirety, section 251.40 provides:

> (a) Subject to the limitations set forth in Subsections (b) and (c) of this section, the county shall pay the expense of holding a local option election authorized by this code in the county, justice precinct, or incorporated city or town in that county, provided, however, that if an election is to be held only within the corporate limits of a city or town located wholly within the county and not elsewhere, the county may require the incorporated city or town to reimburse the county for all or part of the expenses of holding the local option election.

> (b) County expense is limited to the holding of one election in each of the political subdivisions in Subsection (a) of this section in a one-year period where the intent of the election is to legalize the sale of alcoholic beverages. County expense is limited to the holding of one election in each of the political subdivisions in Subsection (a) of this section in a one-year period where the intent of the election is to prohibit the sale of alcoholic beverages.

> (c) All other local option elections shall be paid by the county from funds derived by the county as prescribed in Section 251.41 of this code.

Section 251.41 provides:

> (a) If under Section 251.40 of this code the county is not required to pay the cost of the election, the county clerk shall require a deposit before the issuance of a petition for a local option election.

> (b) The deposit must be in the form of a cashier's check in the total amount of 25 cents per voter listed on the current list of registered voters residing in the county,

>        justice precinct,   or  incorporated  city  or
>        town where the election is to be held.
>
>            (c)   The money received shall be deposited
>        in  the   county's  general  fund.   No  refund
>        may be   made   to  the  applicants  regardless
>        of whether the  petition is  returned to  the
>        county clerk or the election is ordered.
>
>            (d)  The  county  clerk  may  not  issue  a
>        petition to the applicants unless the deposit
>        is made,  if  a  deposit is  required by  this
>        code.
>
>            (e)   A violation of Subsection (d) of this
>        section is  a  misdemeanor  punishable  by  a
>        fine of  not less  than  $200 nor  more  than
>        $500, or confinement in  the county jail  for
>        not more than 30 days, or both.

Specifically, you  inquire  about  the  25  cent  per  voter
deposit requirement  prescribed by  section 251.41(b).    You
ask what the legislative intent was in requiring the deposit
and whether the county must  hold an election for which  the
deposit is inadequate.[1]

This deposit  provision was  added to  the statute  in
1967.  The  documents  relating  to  the  legislation  which
established the deposit requirement did not reveal the logic
used by the legislature in  selecting the 25 cent per  voter
amount.  Subsection (c)  of that section  provides that  the
deposit will  be placed  in the  county's general  fund;  no
refund is allowed  whether the  petition is  returned or  an
election is held.  The legislature must have envisioned  the
county receiving deposits,  on occasion, that  would not  be
expended in  a particular  election.  The  section does  not
provide for  the collection  of additional funds  from  the
petitioner after  the  actual election  expenses  have  been
incurred.  Subsection  (a)  of  section  251.41  makes  the
deposit a condition precedent to the issuance of a petition,
not the ordering of the election.

_____

1.  You do not  inquire about, nor  do we address,  any
question as  to the  constitutionality of  the 25  cent  per
voter deposit requirement.

We think the provisions contemplate that a fund will be maintained from deposits collected and that the costs of elections for which deposits are required under section 251.41 shall be paid from that fund (except to the extent reimbursement of expenses required by the county under section 251.40(a) covers said costs). Thus, it is irrelevant under the statute if the deposit for a particular election does not cover its cost, since the statute contemplates that the costs will be paid not from that particular deposit but rather from the fund accumulated from all deposits past and future. If the fund is inadequate to pay for an election, the costs of which are required by the statute to be paid from the fund, then we think the county must wait until the fund is replenished by future deposits to recoup any county money proper which had to be spent as a consequence of the fund's depletion. Whether the applicable provisions should be amended to provide for increased deposits so that an adequate fund will be maintained is of course a matter for the legislature.

In our opinion, a county may not refuse to hold an election pursuant to sections 251.40 and 251.41 merely because the 25 cent per voter deposit required for the petition for that election may prove insufficient to cover the cost of the election.

## S U M M A R Y

All signatures or names in a series that appear to violate Alcoholic Beverage Code section 251.10(b)(4) are to be disregarded in verifying a petition for a local option liquor election.

A county may not refuse to hold an election pursuant to sections 251.40 and 251.41 of the Alcoholic Beverage Code because the 25 cent per voter deposit is insufficient to offset the county's expenses in conducting the election.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General